UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------- x
                                      :

UNITED STATES OF AMERICA,      :           **Memorandum and Order**

                                     :

              -against-          :            06-cr-782 (DLI)

                                     :

RAHEIM WYATT,                   :

                                     :

              Defendant.      :

                                     :
-------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge**

Defendant, Raheim Wyatt ("defendant" or "Wyatt"), who pled guilty to being a felon in possession of a firearm, requests that the court consider imposing a sentence within the guidelines range of 63-78 months calculated by the U.S. Probation Department ("Probation") in the Presentence Investigation Report ("PSR"), instead of the 120-month range set by Probation in a subsequent addendum to the PSR.[1] The higher guidelines range was prompted by a sentencing submission from the government that referred to the defendant's possible involvement in a murder committed by the Folk Nation gang in 2000. Specifically, the government provided an excerpt of the trial transcript from a separate case tried before another judge in this district in which a cooperating witness testified that an individual named "Rah," purportedly the defendant, was the source of the murder weapon. The defendant argues that the provision of this information (the "Folk Nation information") is a breach of the plea agreement under which the

---

[1]      The defendant initially sought specific performance of the plea agreement, which gave an estimated guidelines range of 37-46 months. He has since agreed that the correct sentencing guidelines range is 63-78 months based on his youthful offender adjudication, a fact not known to either the government or defense counsel at the time the parties entered into the plea agreement.

government had promised not to use any information it knew at the time of the plea to support an upward departure from or a particular sentence within the applicable sentencing guidelines range. The government concedes that it had prior knowledge of the Folk Nation information and has asked the court not to consider it for sentencing. The government denies breaching the plea agreement and explains that it was simply trying to inform the court of public information about the defendant, and not pressing for a higher sentence.

For the reasons set forth more fully below, the court concludes that, while it retains broad discretion to consider information about a defendant for sentencing, the information must be reliable. In this case, the court cannot establish the reliability of the government's Folk Nation information. The court was initially prepared to hold an evidentiary hearing to examine the Folk Nation information, but the government has refused to produce any further evidence beyond its initial sentencing submission, and the defendant similarly has affirmatively waived his right to a hearing. Under these circumstances, the court has decided to disregard the disputed Folk Nation information and not consider it in determining the sentence it should impose. The court further concludes that the government's use of the Folk Nation information was a breach of the plea agreement because it was intended to support a higher sentence, even if the government has tried to avoid saying so explicitly. In this regard, the court notes that the defendant does not wish to withdraw his guilty plea. The applicable guidelines range in this case remains 63-78 months as set forth in the original PSR.

At this time, however, the court cannot commit itself to imposing either a sentence within the guidelines range or a non-guidelines sentence before hearing the parties at sentencing and weighing all factors under 18 U.S.C. § 3553(a). Before becoming aware of the Folk Nation information, the court had, *sua sponte*, given the parties notice pursuant to Fed. R. Crim. P. 32(h)

(the "Rule 32(h) notice") that it was considering an upward departure from the guidelines range for entirely separate reasons and the parties were given the opportunity to submit additional sentencing memoranda. The court will therefore proceed to sentencing with an open mind to either impose a sentence within the guidelines range or non-guidelines sentence pursuant to 18 U.S.C. § 3553(a).

## I. BACKGROUND

The facts of this case warrant some discussion. On March 31, 2006, New York State Parole officers recovered a Taurus .357 caliber revolver, a Colt .45 caliber handgun, a gun clip, and ammunition in defendant's residence. At the time, Wyatt was under parole supervision after his release from New York State custody, and was subject to random searches of his residence as a condition of his release. He briefly was held in state custody before an indictment was filed in this court charging him with a single count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), 924(a)(2) and 3551 *et. seq*. Wyatt pled guilty on May 24, 2007, after entering into a plea agreement with the government.

### A. The plea agreement

The plea agreement, which the court reviewed and accepted upon taking the defendant's guilty plea allocution, set forth the sentencing consequences attendant upon conviction. It stated, *inter alia*, that the offense of conviction carries a statutory maximum term of imprisonment of ten (10) years and no minimum sentence. The parties estimated Wyatt's total offense level to be 14 and his criminal history category to be VI, resulting in a range of imprisonment of 37-46 months under the United States Sentencing Guidelines ("guidelines"). (Plea Agrmt. ¶ 2, attached as Exh. 2 to Government's Sentencing Memorandum (Dkt. Entry No. 30); Transcript of the Plea

Allocution ("Plea Tr."), dated May 24, 2007, at 21).[2]  The plea agreement, which follows the standard format for most plea agreements in this district, stipulated that the guidelines are advisory and a sentence in accordance with the guidelines is not mandatory. It further noted that the court must consider other factors to arrive at an appropriate sentence in the case.  (Plea Agrmt. ¶ 2).

The plea agreement also apprised the defendant that the government would advise the court and Probation of "information relevant to sentencing, including criminal activity engaged in by the defendant, and such information may be used by the Court in determining the defendant's sentence."  (*Id.*).  As part of the plea bargain, the government agreed that, "based on the information known to the [U.S. Attorney's] Office," it will neither argue at sentencing for a specific sentence within the guidelines range nor move for an upward departure under the guidelines. (*Id.* at ¶5(c)).  Finally, the defendant was put on notice that the estimated guidelines range in the plea agreement was not binding on the government, Probation or the court and, if the estimate was incorrect, defendant would not be permitted to withdraw his guilty plea.  (*Id.* at ¶ 3).  Moreover, the court carefully allocuted the defendant, who was under oath, as to his understanding of all of these conditions. (*See* Plea Tr. at 20-22).

B.  The court's review of the PSR and issuance of the Rule 32(h) notice

In the PSR dated October 25, 2007, Probation calculated Wyatt's Total Offense Level to be 19 instead of 14, because he had a prior violent felony conviction.  In June 1994, Wyatt was adjudicated a youthful offender in New York for the crime of robbery in the first degree and sentenced to four years of imprisonment.  (*See* PSR, ¶¶ 13, 24-27 *citing* United States Sentencing

---

[2]    The defendant may have been eligible for the subtraction of an additional point for timely acceptance of responsibility, which would have brought his Total Offense Level down to 13 and lowered the guidelines range to 33-41 months. (*See* Plea Tr. at 20-21; Deft. Objections to the PSR, dated Dec. 10, 2007 (Dkt. Entry No. 24)).

Guidelines Manual ("U.S.S.G.") § 2K2.1(a)(4)(A)).[3]  This offense is not reflected in Wyatt's

National Crime Information Center (NCIC) print-out and was not known to either the

government or defense counsel at the time they estimated the guidelines range in the plea

agreement. The revised Total Offense Level, based on a Criminal History Category of VI, raised

the applicable guidelines range to 63-78 months in the PSR. (*See* Transcript of presentence conf.

on Feb.13, 2008 ("2/13/08 Tr.") at 11).

On February 11, 2008, the court began to prepare for sentencing by reviewing the PSR.

When the court learned the nature and extent of Wyatt's criminal past from the PSR, it felt that

an upward departure from the guidelines range may be warranted.  The court immediately issued

an electronic notice pursuant to Fed. R. Crim. P. 32(h) to inform the parties that the court was

considering an upward departure from the applicable sentencing guidelines range and

considering imposing a non-guidelines, statutory maximum sentence of ten years' imprisonment.

In the Rule 32(h) notice, the court, in pertinent part, stated that:

> it is contemplating upwardly departing from the applicable sentencing guideline
> range and imposing a non-guideline sentence by imposing the statutory maximum
> sentence of ten years of imprisonment based upon the following grounds: the facts
> and circumstances surrounding the defendant's arrest and the instant offense, the
> seriousness of the defendant's criminal history (U.S.S.G. § 4A1.2(a)(1)), the
> history and characteristics of the defendant, to reflect the seriousness of the
> offense, to promote respect for the law, to protect the public from further crimes
> of the defendant, and the likelihood of recidivism. *Specific factors being
> considered by the court include*: (1) defendant's apparent repeated failure to adjust
> to conditions of parole; (2) repeated convictions for illegal firearms possession, (3)
> overall criminal history [defendant is a career offender] beginning with an armed
> carjacking, and ending with the conviction for the attempted rape of a minor, (4)
> the high risk that defendant will recidivate (parties are referred to Paragraph 65,

---

[3]     Under U.S.S.G. § 2K2.1(a)(4)(A), the Base Offense Level for unlawful possession of
firearms is 20 if "the defendant committed any part of the instant offense subsequent to
sustaining one felony conviction of either a crime of violence or a controlled substance offense."
*Compare with* U.S.S.G. § 2K2.1(a)(6)(A)(setting the Total Offense Level at 14 for convictions
under 18 U.S.C. § 922(d) generally).

Page 22 of the PSR), and (5) defendant's attempt to minimize [his culpability] or [failure] to fully accept responsibility for the instant offense and his other crimes.

(Rule 32(h) notice, ECF Docket Order dated Feb. 11, 2008)(emphasis added).[4]

### C. The government's February 5 submission

After issuing the Rule 32(h) notice, the court then reviewed the government's sentencing memorandum, dated February 5, 2008 (the "Feb. 5 submission", ECF Dkt. Entry No. 25). In this submission, the government rebutted defendant's objections to the PSR. To counter Wyatt's claim that he was personally victimized, the government argued that it was Wyatt who had victimized others. The government pointed to Wyatt's criminal history recounted in the PSR and cited his possible involvement in another crime, not listed in the PSR or the First Addendum thereto. (Feb. 5 submission at 6). The government wrote that, at a recent racketeering trial of the notoriously violent "Folk Nation" street gang, a cooperating witness identified Wyatt from a photograph and testified that Wyatt had supplied the gun used to commit a murder in 2000. *See United States v. Dewayne Stone et. al.*, 05-CR-401 (ILG), (E.D.N.Y)("the Folk Nation Trial"). In the five-page excerpt of the trial transcript provided to the court, the cooperating witness briefly mentioned an individual identified only as "Rah" in connection with the shooting of Jamel Washington, for which defendant Dwayne Stone was on trial and facing the death

---

[4] As is apparent from the recitation of factors considered by the court for possible imposition of an enhanced non-guidelines sentence, the court had not yet reviewed the government's Feb. 5 submission, but rather had interrupted its review of the sentencing materials to post the Rule 32(h) notice to give the parties as much notice as possible to permit them to respond. Indeed, upon resuming its review of the submissions, the court was taken by surprise by the government's reference to the alleged additional criminal conduct by the defendant that had not previously been disclosed. (*See* Transcript of presentence conf. on Feb. 26, 2008 ("2/26/08 Tr.") at 13).

penalty:[5]

> Q [(Gov't):]  What happened next?
> A [(witness):] He ["Vine" the eventual trigger man] asked Rah if he was strapped, if he had a gun.
> Q             Who do you mean by "he"?
> A             Vine
> Q             If he was strapped?
> A             Yeah, if he [Rah] had a gun
> Q             What did Rah sa[y]?
> A             He told him he ain't have one on him, he went to go get one.
> Q             Did Rah eventually get a gun?
> A             Yeah.
> Q             What kind of gun?
> A             A .38.
> Q             Is that a revolver or is that a semi-automatic gun?
> A             It is a revolver.
> Q             And was the .38 that Rah came out with, was that a long barrel or short barrel?
> A             Long.
> Q             What did Rah do with the gun?
> A             He gave it to Vine.
> Q             After he – why didn't he give the gun to you? Did you ask for the gun?
> A             No, I didn't ask for it.
> Q             After he gave the gun to Vine what did you do next?
> A             We walked back through the [apartment project whereupon Vine committed the shooting of Jamel Washington].

(Transcript of Folk Nation Trial at 3378-79, attached as Exh. A to Gov't Mar. 24, 2008

Submission, Dkt. Entry No. 30[6]). This Folk Nation information, which purports to connect

Wyatt to the Folk Nation murder, was not addressed by the defendant's previously filed

sentencing submissions as it had not been made known to him at that time.

---

[5]     Nowhere in the portion of the transcript provided to the court, Probation, and defense counsel, does the witness actually identify "Rah" as defendant Raheim Wyatt, nor does the witness claim to have seen a photograph of the defendant.  The government has not provided any independent proof in this regard, but rather provided conclusory statements.

[6]     The government did not attach the trial transcript to its Feb. 5 Submission filed on the public docket (Entry No. 25), but did attach it to the courtesy copies provided to the court, defense counsel and Probation.  (*See* 2/26/08 Tr. 13).

The government's eleventh hour disclosure of the Folk Nation information on the eve of sentencing raised more questions than answers. The court could not tell from the limited submission whether the government intended to use this information to advocate for a higher sentence. The court also was curious as to why the government had not sought an indictment against Wyatt based on this information when it obviously had a witness to Wyatt's alleged involvement in a murder or why defendant was not named as a co-defendant in the Folk Nation case based on this evidence. Notably, neither the defendant nor his attorney had been provided the opportunity to cross-examine the cooperating witness, or review the evidence the government had implicating him in the Folk Nation matter. Indeed, the court could not even determine on this limited submission whether the witness' reference to "Rah" was to the defendant. *See supra* note 4. The court thus deemed it necessary to hold a *Fatico* hearing[7] to draw out additional facts before sentencing.

Probation examined the Folk Nation information and prepared a Second Addendum to the PSR, dated February 8, 2008. The court did not receive this report until the conference on February 13, 2008. (2/13/08 Tr. at 6). In this addendum, Probation concluded from the trial transcript excerpt in the Feb. 5 submission that Wyatt provided the gun and did so knowing that it would be used to commit another offense. Solely on the basis of this finding, Probation elevated Wyatt's Total Offense Level to 40.[8] (Second Addendum, ¶ 18). Based on a criminal history category of VI, the resulting sentencing guidelines range would have been 360 months to

---

[7]     An evidentiary hearing held to gather additional facts for sentencing set forth in *United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978)(*Fatico I*).

[8]     Under U.S.S.G. § 2K2.1(c)(1)(B), if a defendant "transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense" in which "death resulted," the applicable guideline is then cross-referenced to U.S.S.G. Chapter 2, Part A, Subpart 1. Under U.S.S.G. § 2A2.1, murder in the first degree carries a Base Offense Level of 43.

life, but because of the statutory maximum of the instant offense of conviction, the range was capped at 120 months. (*Id*. ¶ 80).[9]

### D. The presentence conferences

Sentencing was scheduled for February 13, 2008. The defendant was not present due to his refusal to come to court. Defense counsel waived Wyatt's presence for purposes of the conference since the sentencing was not going forward. In light of the court's Rule 32(h) notice, the government's Feb. 5 submission, and Probation's Second Addendum, the court granted the defense request for an adjournment. The court explained that it had issued the Rule 32(h) notice before it was aware of the references to Wyatt from the Folk Nations trial. (2/13/08 Tr. at 7-8). The court requested that defense counsel inform Wyatt that he is entitled to a *Fatico* hearing to examine the factual allegations raised in the government's submission. (*Id*. at 8). The court then asked the government to clarify its position:

> It's not clear to the Court whether the Government is advocating a non-guidelines sentence or advocating that the Court adhere to the plea agreement. I'm not understanding what the Government's position is.
> [The submission] also puts the Court in [a] somewhat difficult position because if the Government says, 'Well, we're not stepping outside of the plea agreement, but by the way, there's this additional information that the Court needs to look at.'

(*Id*.).

The prosecutor explained that the government still sought a guidelines sentence within the range of 63-78 months. The government argued that it is not bound by the 37-46 months estimated in the plea agreement because it was not aware of Wyatt's youthful offender adjudication at the time. As for Wyatt's possible involvement in the homicide by the Folk

---

[9]     Wyatt is currently serving an undischarged term of imprisonment, and the court has discretion under U.S.S.G. § 5G1.3(c) to impose a sentence that would run concurrently, partially concurrently, or consecutively to Wyatt's present custodial term. (Second Addendum ¶ 80).

Nations gang, the prosecutor indicated that he was not personally aware of this information but other members of his office were aware of it before the government entered into the plea agreement. (*Id*. at 11). Thus, the government considered "itself bound by the plea [agreement] not to advocate for a guidelines range based on this relevant conduct which was arguably known to the Government when the plea was entered into." (*Id*. at 12). However, the government offered no "factual or legal objection to Probation Department's conclusion" setting forth the 120-month range in Second Addendum. (*Id.*). The court gave the defense the opportunity to respond to the government's submission, and held out the possibility of holding a *Fatico* hearing on the issue.

At the next conference on February 26, 2008, the court explained to the defendant, who then was present, that it had issued the Rule 32(h) notice prior to becoming aware of the Folk Nation information. (2/26/08 Tr. at 12, 13). The defense asked the government to clarify its position concerning a *Fatico* hearing. (*Id.* at 9). The government stated that, because the Folk Nation information was known to the U.S. Attorney's Office at the time the plea agreement was entered into, it "cannot advocate for a higher guidelines range" in this case. (*Id.* at 11). The government characterized the Feb. 5 submission simply as drawing the court's attention to publicly available information, and indicated, with respect to a *Fatico* hearing, that it did not "intend to offer any additional testimony or evidence in connection with this sentencing on that homicide." (*Id.*).[10] The defense expressed concern about the defendant's lack of opportunity to confront the evidence from the Folk Nation now being used against the defendant.

---

[10] The government did note that not one but two witnesses at the Folk Nation trial had testified to Wyatt's possible involvement. (2/26/08 Tr. 10).

While the court noted that the Folk Nation information could be relevant to sentencing, i.e., the information could cut against the defendant's explanation that he possessed guns for personal safety, the court held that the trial transcript itself is insufficient to protect Wyatt's rights because he did not have his own counsel present at that trial to cross-examine the cooperating witness or to present contradictory evidence. (*Id*. at 15). As the court was about to schedule a *Fatico* hearing and order the government to make its witnesses available, the government objected. The government cited "safety and logistical concerns" including the risks to the cooperating witness and the fact that the 3500 materials are placed under the protective order of the Folk Nation trial court. (*Id.* at 20). The government stated plainly that it would rather have the court disregard the information in the Feb. 5 submission than provide the testimony of the cooperating witnesses at a hearing:

> It was information [in the] public record the government felt Your Honor deserved. We think you should disregard it, rather than calling the witness . . . [F]rankly, we have a triple murder conviction that I don't want to start relitigating issues. . . . And I take [defense counsel]'s point [about defendant's Sixth Amendment right to confrontation], but the Court is certainly, as you know, a[n] experienced jurist herself, the Court has to all the time disregard things at sentencing. We are required by statute to advise the probation department and Your Honor of all relevant facts. It doesn't require the government to prove them up.

(*Id*.).[11] The court expressed its displeasure with the government's conduct, gave both sides the opportunity to further brief the contested issues relating to a *Fatico* hearing, and invited further input from Probation.

The defense does not oppose the government's withdrawal of its claim of Wyatt's possible role in the Folk Nation case, but argues that the government had breached the plea agreement by

---

[11]  The government also acknowledged that the plea was "[perhaps] . . . not a plea that the government should have entered into at the time." (2/26/08 Tr. at 17).

attempting to influence the court with the Folk Nation information.  As a remedy for this alleged breach, the defendant does not seek to withdraw his plea.  (Transcript of presentence conference on Apr. 11, 2008 at 11).  Instead, the defense initially sought specific performance of the plea agreement, which provided for the 37-46 month guidelines range, but later acknowledged that Probation could use the youthful offender adjudication to adjust the applicable guidelines range, and asked for a sentence within the 63-78-month range.  (Transcript of Oral Arg. on May 16, 2008 ("5/16/08 Tr.") at 29).

The government denies breaching the plea agreement, and maintains that it provided the court with public information about the defendant in good faith.  The government concedes that it has not met its burden of proving defendant's involvement in the Folk Nations matter, and stands by the 63-78-month guidelines range contained in the original PSR.  (Gov't Mar. 24 sentencing memo. at 6).  Neither side is seeking a *Fatico* hearing.  Indeed, defense counsel stated at oral argument on May 16 that the defendant made a strategic decision to waive a *Fatico* hearing (5/16/08 Tr. at 24). Probation, in its third addendum to the PSR, adheres to its upward adjustment of the effective guidelines range to 120 months. The court adjourned sentencing, pending decision on the alleged breach of the plea agreement.

## II.  DISCUSSION

Wyatt argues that the plea agreement prohibited the government from using information already in its possession at the time of the plea to advocate for a specific sentence within the guidelines range or to move for an upward departure.  The government acknowledges that it was aware of the Folk Nation information before the plea, but denies using it to argue for a particular sentence within the applicable guidelines range or in favor of an upward departure.  Rather, the government insists the Feb. 5 submission was meant only to give the court public information

relevant to sentencing. The court resolves the dispute over the propriety of the disclosure of the Folk Nation information in three parts. First, the court considers the relevance and reliability of this information to sentencing. Then, it will decide whether the government's disclosure and use of this information breached the plea agreement. Finally, the court will determine the appropriate remedy under all the facts and circumstances herein.

A. The court's discretion to consider the Folk Nation information

At sentencing, a court's discretion to consider information about the defendant "is largely unlimited either as to the kind of information [the court] may consider, or the source from which it may come." *United States v. Carmona*, 873 F.2d 569, 574 (2d Cir.1989) (internal quotations omitted); *see also* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). A court may "consider any and all information that reasonably might bear on the proper sentence for the particular defendant." *United States v. Juwa*, 508 F.3d 694, 700 (2d Cir. 2007) (citing *Wasman v. United States*, 468 U.S. 599, 563 (1984)); *Carmona*, 873 F.2d at 574 ("Any information or circumstance shedding light on the defendant's background, history and behavior may properly be factored into the sentencing determination."). A defendant's "[c]onduct that is not formally charged or is not an element of [his] offense of conviction may [still] enter into the determination of the applicable guidelines sentencing range." U.S.S.G § 1B1.3 cmt.

At first glance, the Folk Nation information might reasonably bear on the proper sentence that the court could give in this case. The information, suggesting other criminal conduct by Wyatt, could undercut his explanation that the guns he possessed were kept for personal safety.

The information could also result in an enhanced sentencing guidelines calculation as proposed by Probation in the Second and Third Addenda to the PSR. Yet, while the court may consider a wide range of information, it must also ensure the defendant's due process right to receive a sentence based on accurate and reliable information. *Juwa*, 508 F.3d at 700 (citations omitted). Wyatt has argued that he should be entitled to confront and cross-examine the cooperating witness who had implicated him in the Folk Nation trial. The government has been unwilling to produce the cooperating witness citing security concerns and a general reluctance to retry the murder case at this sentencing. The court finds unpersuasive the government's proffered reasons for its unwillingness to conduct a *Fatico* hearing.

A defendant's due process rights are "plainly implicated at sentencing," but sentencing proceedings do not require "all the procedural safeguards and strict evidentiary limitations of [] criminal trial[s]." *United States v. Martinez*, 413 F.3d 239, 244 (2d Cir. 2005)(citing *United States v. Fatico*, 603 F.2d 1053, 1054 (2d Cir.1979)(*Fatico II*)). For example, it is "not a denial of due process in sentencing to rely on hearsay information supplied by witnesses whom the accused could neither confront nor cross-examine." *Torres v. Berbary*, 340 F.3d 63, 72 (2d Cir. 2003)(citing *Fatico I*, 579 F.2d at 711). A sentencing judge may consider transcripts from another judicial proceeding in which the defendant was not a party nor represented by counsel. *Carmona*, 873 F.2d at 574. Due process does not prevent the use in sentencing of out-of-court declarations by an informant where there is good cause for the nondisclosure of his identity so long as there is sufficient corroboration by other means. *Fatico I*, 579 F.2d at 713. Due process merely protects a defendant from being sentenced on the "basis of materially incorrect information" and requires at least "some minimal indicia of reliability to accompany a hearsay statement." *Martinez*, 413 F.3d at 243. When there is a significant possibility of misinformation,

the sentencing court may require the government to verify the information. *Fatico I*, 579 F.2d at 713. Ultimately, the facts relevant to sentencing must be found by a preponderance of the evidence. *Juwa*, 508 F.3d. at 701.

The Folk Nation information comes to the court in the form of a transcript excerpt of a cooperating witness's testimony in another trial before another judge in this district. The court has the discretion to *consider* this information even though Wyatt was not a defendant in that case and did not have his counsel present. However, to *rely* on this information, the court must establish its accuracy and reliability. By itself, the transcript excerpt indicates only that a cooperating witness testified that an individual he identified as "Rah" had provided the firearm that "Vines" used to shoot Jamel Washington. The court cannot determine from the excerpt whether the person identified as "Rah" is defendant Wyatt or that Wyatt had transferred the gun with knowledge or intent that it would be used in connection with the shooting. Wyatt has not been charged in connection with Washington's murder, and there is no indication that he will be. Without further corroborating evidence, the court cannot rely on the Folk Nation information to impose the higher guidelines recommended by Probation in the Second Addendum to the PSR.

The government has been unwilling to provide any further evidence to verify the Folk Nation information, and would rather the court disregard the information than call the cooperating witness for a hearing. The court has noted the normal rules of evidence do not apply at an evidentiary hearing to elicit additional information for sentencing. The defendant is not entitled to a full blown trial; hearsay is admissible and the government may produce the case agent and other law enforcement witnesses who may corroborate the testimony of a witness who cannot be produced for the hearing. *See Carmona*, 873 F.2d at 574. Nevertheless, the government has been unwilling to provide any more evidence.

The decision to hold such an evidentiary hearing at sentencing is within the broad discretion of the court. *United States v. Cotto*, 347 F.3d 441, 448 n.7 (2d Cir. 2003)). While the court has the power to hold a hearing to resolve a contested issue, it need not do so if it "disregard[s] the disputed material." *United States v. Charmer Indus., Inc.*, 711 F.2d 1164, 1172 (2d Cir. 1983); *United States v. Williamsburg Check Cashing Corp.*, 905 F.2d 25, 29 (2d Cir. 1990).

The government, by its own admission, has met not its burden of proving Wyatt's involvement in the Folk Nation murder by a preponderance of the evidence. Both parties want the court to disregard the information and have declined to proceed with an evidentiary hearing. Without further evidence, the court cannot establish the reliability of the Folk Nation information. The court will disregard the Folk Nation information for sentencing. As a result, the court finds that the applicable guidelines range in this case should remain at 63-78 months as set forth in the original PSR, and strikes the Second and Third Addenda to the PSR.

B.   The provision of the Folk Nation information as a breach of the plea agreement.

The court now turns to the question of whether the government's disclosure of the Folk Nation information constitutes a breach of the parties' plea agreement. In Paragraph 5(c) of the plea agreement, the government promised not to use any information known to the U.S. Attorney's Office at the time it entered into the plea to argue for a particular sentence within the guidelines range or move for an upward departure from the guidelines range. The defendant asserts that the Folk Nation information was known to the government, and was disclosed to the court to support a higher sentence than what the parties had contemplated in the plea agreement.

Courts interpret plea agreements in accordance with principles of contract law and look to the reasonable understanding of the parties as to the terms. *United States v. Griffin*, F.3d 253,

360 (2d Cir. 2007). They require the government to "take particular care in fulfilling its responsibilities" under plea agreements and resolve ambiguities in such agreements in favor of the defendant because the government enjoys "awesome advantages in bargaining power." *Id.* "[B]ecause plea agreements require defendants to waive fundamental constitutional rights, prosecutors are held to meticulous standards of performance." *United States v. Vaval*, 404 F.3d 144, 153 (2d Cir. 2005).

Generally, courts will strictly construe provisions in the plea agreement that prevent the government from moving for upward departures based on information the government already knew at the time it entered into the plea. Once bound by such a provision, the government cannot apply for enhancements or adjustments based on such information to alter the non-binding estimate of the guidelines range offered in the plea agreement. *See United States v. Palladino*, 347 F.3d 29, 33-34 (2d Cir. 2003)(also holding that a "sentence imposed pursuant to a plea agreement must follow the reasonable understandings and expectations of the defendant with respect to the bargained-for sentence.")(internal citations omitted).

The government need not explicitly move for an upward departure for a court to find a breach of the plea agreement's prohibition of such advocacy, if, in fact, the government's arguments and comments at sentencing amounted to an argument about where within the range the court should sentence defendant or whether to upwardly depart. *Vaval*, 404 F.3d at 152-54 (2d Cir. 2005). In *Vaval*, the government also was prohibited from seeking an upward departure or taking a position as to a particular sentence within the applicable guidelines range. At sentencing, the prosecutor stated her intention to abide by those prohibitions and never explicitly sought a higher sentence. *Id.* Nevertheless, the Second Circuit found the prosecutor breached the plea agreement by offering "highly negative characterizations" of the defendant's criminal

history, calling into question the defendant's "purported contrition" and suggesting that she could "technically" move for an upward departure and proceeding to cite the reasons why. *Id.* at 153. As in this case, the government was permitted by the plea agreement to "advise" the court of "information relevant to sentencing, including criminal activity engaged in by the defendant." *Id.* The Second Circuit held that this provision did not permit the government's advocacy because the government's arguments provided no new factual or legal information to the court and "served no purpose other than to advocate that the court upwardly depart or impose a high sentence within the [g]uidelines range." *Id.* at 154.

Whereas the government in *Vaval* gave no new facts and engaged in highly inappropriate sentencing advocacy, the government in this case did provide factual information that was new to the court, engaged in minimal advocacy, and did not explicitly advocate a departure. *C.f. United States v. Riera*, 298 F.3d 128, 135-36 (2d Cir. 2002)(finding the government had come close to breaching the plea agreement when it advised the district court of the discretion to upwardly depart based upon information provided *at the court's request* and then repeatedly repudiated any intention to advocate for such upward departure.). The unsolicited information disclosed by the government herein caused Probation to re-calculate the sentencing guidelines and raise it to 120 months, the statutory maximum. While the court has chosen to disregard the information for its lack of corroboration and reliability, the court is concerned about the potentially prejudicial conduct by the government.

The disclosure of the Folk Nation information altered the parties' original understanding of their plea agreement. Wyatt pled guilty to being a felon in possession of a firearm with the understanding that the government would not use other information already in its possession against him at sentencing. The Folk Nation information, released by the government on the eve

of sentencing, essentially implicated him in the murder of Washington. Probation's upward adjustment of the sentencing guidelines range would have been higher had it not been for the statutory maximum on the defendant's guilty plea to a weapons possession offense. Since the government was already aware of the Folk Nation information, it could have confronted Wyatt about it before entering into the plea agreement instead of waiting until sentencing. The government knew or should have known that disclosing this information at sentencing could raise the defendant's sentence. The alteration of the plea bargain caused by the disclosure was not saved by the government's refusal to provide any further evidence to confirm the Folk Nation information.

The government's conduct is not fully shielded by its obligation to inform the court of information relevant to sentencing. At the February 13 conference, the government explained it had disclosed the Folk Nation information out of an "obligation to bring to the Court all of the information that was known to it about this defendant, certainly that [was contained] in the public record, . . . so Your Honor could consider it both [] for 3553(a) consideration in general and for whatever other purpose or effect it might have." (2/13/08 Tr. at 12). The prosecutor went on to claim that "the Government is not advocating for anything above the 78-month term, which is the high end of the guidelines range that the Government is free to argue for." (*Id.*). In this last statement, the government crossed line from informing the court to improper advocacy. The government was not free to use the Folk Nation information to support its consideration by the court either as to 3553(a) factors or any particular sentence within the applicable guidelines range, certainly not a 78-month term at the high end.

At the February 26, conference, the government again explained its reasons for disclosing the Folk Nation information:

> We merely brought that information to Your Honor's attention because we felt obligated to and because we also want to advocate for a within guideline[s] sentence of the sixty-three to seventy-eight guidelines range, and of course, Your Honor is free to do whatever you choose.

(2/26/08 Tr. at 11). Read narrowly, the first reason given by the government, to fulfill its obligation to inform the court, is consistent with the plea agreement. *C.f. Vaval*, 404 F.3d at 154 (noting that providing "legal and factual information to the court . . . is an essential function of the government at sentencing"). The second reason, however, shows that the government was also using the Folk Nation information to oppose defense counsel's request for a non-guidelines sentence below the recommended range and argue in favor of the 63-78-month guidelines range. This range is higher than that estimated in the plea agreement. Though the government is entirely justified to argue for the higher range properly calculated by Probation based on Wyatt's youthful offender adjudication, a fact not known to either the government or the defense at the time of the plea, it cannot do the same with the Folk Nation information due to its previous knowledge thereof.

## C. Remedy

Generally, the remedy for a breach of the plea agreement is either to permit the plea to be withdrawn or to order specific performance of the agreement. *Vaval*, 404 F.3d at 154. However, not every breach requires a remedy, and the need for a remedy depends on the "nature of the broken promise and the facts of each particular case." *Id.* (quotations omitted). In this case, the government breached the plea agreement by its improper disclosure and use of information at sentencing. The court has separately determined that the information is unreliable and has chosen to disregard it for sentencing.

Wyatt is not seeking to withdraw his guilty plea. He initially sought specific performance of the plea agreement and asked for a sentence within the range of 37-46 months

outlined therein. He has since acknowledged that Probation's reliance on his youthful offender adjudication to raise the applicable guidelines range to 63-78 months is proper and consistent with the law of this circuit, and, therefore, asks the court to impose a sentence within that range. The court agrees the applicable guidelines range in this case should be 63-78 months, not the 120 months set by Probation in the Second Addendum to the PSR. Accordingly, the court strikes the Second and Third Addenda to the PSR. However, as recently reemphasized by the Supreme Court in *United States v. Kimbrough*, 552 U.S. ---, ----, 128 S.Ct. 558, 569 (2007) and *Gall v. United States*, 552 U.S. ---, ----, 128 S.Ct. 586, 594 (2007), the sentencing guidelines are advisory. While the court must consider them as an initial step in sentencing, it must then consider the factors set forth in 18 U.S.C. § 3553(a) against the peculiar facts of each case in exercising its discretion to determine a reasonable sentence. *Irizarry v. United States*, --- U.S. --- -, ---, No. 06-7517, slip op. at 6 (June 12, 2008) (citing *Gall*, 128 S.Ct. at 597).[12] As such, the court will not commit either to a sentence within the guidelines range or a non-guidelines sentence below or above the range prior to hearing the parties at sentencing.

The court's Rule 32(h) notice was issued for reasons completely unrelated to and without knowledge of the Folk Nation information and should not be affected by the government's breach.[13] The court therefore retains the discretion to issue a sentence outside the guidelines range of 63-78 months, but will proceed to sentencing with an open mind and will consider all factors under 18 U.S.C. § 3553(a), as well as the guidelines range.

---

[12]     The appellant in *Irizarry* bears no relationship to the court.
[13]     The court's decision in the instant case is not affected by today's Supreme Court holding in *Irizarry*, that, in light of the advisory nature of the guidelines, prior notice of a court's intention to impose a non-guidelines sentence pursuant to Rule 32(h) is not mandatory.

### III.  CONCLUSION

For all the reasons set forth above, the court finds that the government had breached the plea agreement by its disclosure and use of the Folk Nation information on the eve of sentencing. The court will disregard the Folk Nation information for sentencing, but denies defendant's request to commit the court to a guidelines sentence within the 63-78 month range in advance of the sentencing proceeding.   The court's Rule 32(h) notice remains in force.  To date, the court has not determined what sentence it will impose on the defendant, but will consider, as it must, the advisory sentencing guidelines and any relevant upward or downward departures, as well as the factors listed in 18 U.S.C. § 3553(a).

SO ORDERED.

Dated: Brooklyn, New York
          June 12, 2008

                                        _____/s/_____
                                                  DORA L. IRIZARRY
                                             United States District Judge